## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHARLES EDWARD HENDON, JR.,

       *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant.*

_____/

CASE NO. 2:17-cv-12434

DISTRICT JUDGE GEORGE CARAM STEEH

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 17, 19)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 17), be **DENIED**, that the Commissioner's Motion, (Doc. 19), be **GRANTED**, and that this case be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Charles Edward Hendon, Jr.'s ("Plaintiff") claim for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 4). The

1

matter is currently before the Court on cross-motions for summary judgment. (Docs. 17, 19).

On December 15, 2014 and August 26, 2016, respectively, Plaintiff filed applications for SSI and DIB, alleging a disability onset date of August 30, 2014. (Tr. 163-68, 190-96). The Commissioner denied his claims. (Tr. 85-94). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on August 24, 2016, before ALJ Roy E. LaRoche, Jr. (Tr. 30-69).  The ALJ issued a decision on January 25, 2017, finding Plaintiff not disabled. (Tr. 9-29). On June 7, 2017, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on July 27, 2017. (Doc. 1).

**B.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker*

2

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not

"try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial

evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than [twelve]
> months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The

Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of your
> impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement . . . or a combination of impairments that
> is severe and meets the duration requirement, we will find that
> you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. (Tr. 9-29). At Step One, the ALJ found that Plaintiff last met the insured status requirements of the Act on September 30, 2014, and had not engaged in substantial gainful activity during the interval between his alleged onset date of August 30, 2014 and his date last insured. (Tr. 14). At Step Two, the ALJ concluded that the following impairments qualified as severe: osteoarthritis of the bilateral shoulders, degenerative disc disease of the lumbar spine, ischemic cardiomyopathy with depressed ejection fraction, and obstructive sleep apnea. (Tr. 14-15). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 15-16). Thereafter, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except:

> the ability to sit or stand at will, provided that the claimant is not off task more than ten percent (10%) of the workday. No climbing of ladders, ropes, scaffolds; occasional climbing of ramps and stairs as well [as] balancing,

stooping, kneeling, crouching, and crawling. No overhead reaching with the bilateral upper extremities and frequent fingering with the bilateral upper extremities. No more than occasional exposure to extreme heat, cold, humidity, and no exposure to vibration and unprotected heights. Due to pain and/or side effects from medications, the claimant can only perform simple, routine and repetitive tasks.

(Tr. 16). At Step Four, the ALJ found Plaintiff incapable of performing his past relevant work. (Tr. 20). But proceeding to Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 21-22).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Plaintiff's medical records. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### i.    Function Report

Plaintiff filled out a Function Report dated January 29, 2015 that appears in the administrative record. (Tr. 208-15). In it, he suggested his "heart is only operating at 20%. I can't walk long periods of times [sic] or stand" and his two "strokes has [sic] affected my speech, walking, and left side strength." (Tr. 208). He continued to care for his seven-year-old son with the help of his mother. (Tr. 209). Due to "heart palpitations" and "medications," he woke 4 to 5 times per night. (*Id.*). His conditions interfered with his ability to dress, bathe, groom himself, and use the toilet. (*Id.*). He could microwave food

and prepare breakfast daily, but "I can't hold pots and stir as before." (Tr. 210). Weakness in his left arm prevented him from performing various yard work and household chores. (Tr. 210-11). He went outside daily, and retained the capacity to drive. (Tr. 211). Every month or two, he shopped in stores for "clothes and shoes," and he continued to handle his finances. (*Id.*). His hobbies included watching television and reading. (Tr. 212). "I was on a bowling league, but now I can't no longer bowl." (*Id.*). He attended church on Wednesdays and Sundays, but "I don't get out anymore to social events." (Tr. 212-13). Prompted to denote abilities with which he struggled, he marked: lifting, squatting, bending, standing, reaching, walking, kneeling, talking, stair climbing, completing tasks, and using his hands. (Tr. 213). He remained able to pay attention and follow written and spoken instructions. (*Id.*). He could also handle changes in routine, but "my strokes were caused by stress and being misdiagnosed from the VA hosp[ital]." (Tr. 214). In August 2014, his doctor prescribed a heart defibrillator and monitor. (*Id.*). Side effects from his medications included frequent urination, migraine headaches, and muscle aches. (Tr. 215).

### ii.      Plaintiff's Testimony at the Administrative Hearing

Plaintiff's counsel opened the hearing by describing Plaintiff's "100% nonservice connected VA disability," as well as "a series of ejection fractions noted in the file in the 20 to 25% range which would meet the criteria of the Social Security impairment listings for cardiac. In addition he has some muscular skeletal issues that would be significant in another case in that he does have tenosis [sic] at L4/L5, and chronic pain in the shoulders which was made worse by an auto accident that he suffered. But the cardiac impairment is overwhelming, and as significant as muscular skeletal problems are, the cardiac

impairment is at listings level." (Tr. 36). Plaintiff then described his living conditions. He

lived in a single level house with a basement, but he never went down to the basement. (Tr.

39). In addition to VA benefits, Plaintiff received "food stamps" and "medical." (Tr. 40).

He held a driver's license and "[o]ccasionally" drove if he felt "up to it." (*Id.*). He drove

his son to school "in the morning time" about "two or three times" per week. (Tr. 40-41).

He also drove to doctors' appointments. (Tr. 41). He visited his cardiologist twice per

month, who recently "said everything was still the same. He didn't see any improvement."

(Tr. 42).

In 2015, Plaintiff was involved in a rollover vehicle accident, and he "was crushed

in the car." (Tr. 44). Afterwards, he sought treatment via physical therapy for issues with

his left shoulder. (Tr. 44-45). This treatment proved ineffective. (Tr. 51). At the time of the

hearing, his treatment only included "the pain meds, the back brace, [and] the inversion

table." (Tr. 52). Pain prevented him from engaging in activities as simple as playing catch

with his son. (Tr. 55). To treat his sleep apnea, he used a CPAP machine every night, which

helped "me to rest," but did not make him "feel more rested" in the morning. (Tr. 54). He

could walk "[m]aybe 50 feet, 100 feet" at one time before needing to rest for "10/15

minutes." (Tr. 57). He could lift up to half a gallon of milk. (*Id.*). He remained "able to lift

[his] arms above [his] head or straight out in front of [him]" about "halfway." (Tr. 58). He

could not stoop or crouch due to the strain in his lower back. (*Id.*).

Due to his conditions, the VA arranged to have someone come over "[e]very day"

to help him "make the beds," cook, or "pick up my prescriptions if I'm due prescriptions."

(Tr. 61).

8

### iii.      The VE's Testimony at the Administrative Hearings

The VE began by classifying Plaintiff's prior work as "[s]upervisor, accounting clerks," with "sedentary" physical demands, "an SVP of 7, it's considered skilled. Bookkeeper, . . . Physical demands are sedentary, SVP of 6. This is considered skilled. Construction worker I, . . . Physical demands, are heavy, SVP of 4, semiskilled. That's it." (Tr. 63).

In his first hypothetical question, the ALJ posed an individual who "would require the ability to alternate between sitting and standing at-will provided they're not off task for 10% of the workday. No climbing of ladders, ropes or scaffolds, and no more than occasional stooping, no overhead reaching or handling with the right upper extremity, and avoid all exposure to unprotected heights. Could such a hypothetical individual perform any of the past work either as actually or generally performed in the national economy?" (Tr. 63-64). The VE indicated that Plaintiff's past jobs "would still be viable" for such an individual. (Tr. 64).

The ALJ's second hypothetical imagined an individual with the same limitations except "reduce the individual to performing sedentary work as defined in the regulations. Again, they would require the ability to alternate between sitting and standing at-will provided not off task more than 10% of the workday. No climbing of ladders, ropes or scaffolds, occasional climbing of ramps, stairs, as well as balance, stoop, kneel, crouch and crawl. Okay. And we're going to do no overhead reaching with the bilateral upper extremities. And they can do frequent fingering with the bilateral upper extremities. No more than occasional exposure to extreme heat, cold, humidity, and no exposure to

vibration, and unprotected heights. Could such a hypothetical individual perform any of the past work either as actually or generally performed in the national economy?" (Tr. 64-65). Again, the VE indicated that Plaintiff's past work would remain available. (Tr. 65).

For the ALJ's third hypothetical, he took "everything from hypothetical two but add[ed] in that due to pain and/or side effects from medications the . . . hypothetical individual could only perform simple, routine, repetitive tasks. I'm assuming that would not allow for any past work?" (*Id.*). The VE confirmed that such an individual could not perform Plaintiff's prior work, but other jobs remained available in the national economy, including: order clerk (with 212,000 national jobs), bench assembly positions (with 277,000 national jobs), and addresser (with 104,000 national jobs). (Tr. 65-66).

### F.   Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).   Both   "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the

10

impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved

11

to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn therefrom—

formerly termed a credibility determination[1]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. 16-3p, 2016 WL 1119029, at *2.

---

[1] On March 28, 2016, SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), superseded and replaced SSR 96-7p. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016). The Social Security Administration explained in SSR 16-3p that the ruling's main purpose was to eliminate the term "credibility," and thereby "clarify that subjective symptom evaluation is not an examination of an individual's character, . . ." 2016 WL 1119029, at *1 n.1. As some in this Circuit have observed, the ruling, read in its entirety does not appear to substantively alter much of the manner by which ALJ's evaluate claimants' statements. *See id.* at *2 ("[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation."); *see also, e.g., Brothers v. Berryhill*, No. 5:16-CV-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017), *R. & R. adopted sub nom. Brothers v. Comm'r of Soc. Sec.*, No. 5:16-CV1942, 2017 WL 2908875 (N.D. Ohio July 7, 2017) ("[A]ccording to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them.").

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. 16-3p, 2016 WL 1119029, at *5. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    Your daily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); 16-3p, 2016 WL 1119029, at *7. Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); 16-3p, 2016 WL 1119029, at *8.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability

unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

   In the Sixth Circuit, a prior decision by the Commissioner can preclude litigation in subsequent cases.

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 1998 WL 283902, at *3 (acquiescing to *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997)). The applicable regulations explicitly invoke *res judicata*: An ALJ can dismiss a hearing where "res judicata applied in that we have a previous [final] determination or decision under this subpart about your rights." 20 C.F.R. §§ 404.957, 416.1457. Ultimately, the *res judicata* effect of past ALJ decisions is actually a form of collateral estoppel precluding reconsideration of discrete factual findings and issues. *See Brewster v. Barnhart*, 145 F. App'x 542, 546 (6th Cir. 2005) ("This Court will apply collateral estoppel to preclude reconsideration by a subsequent ALJ of factual findings that

have already been decided by a prior ALJ when there are no changed circumstances requiring review.").

In *Drummond*, the Sixth Circuit held that the first ALJ's RFC applied to a subsequent period unless the circumstances had changed. 126 F.3d at 843. The court later reaffirmed this principle in *Haun v. Commissioner of Social Security*, rejecting the argument that *Drummond* allowed a second ALJ to examine *de novo* the unadjudicated period following the first denial. 107 F. App'x 462, 464 (6th Cir. 2004). The Commissioner's internal guide explains the different issues and factual findings precluded by *res judicata* under *Drummond*. *See generally Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual*, § I-5-4-62, 1999 WL 33615029, at *8-*9 (Dec. 30, 1999). These include the RFC and various other findings along the sequential evaluation process, such as "whether a claimant's work activity constitutes substantial gainful activity," whether she has a severe impairment or combination of impairments, or whether she meets or equals a listing. *Id.*[2]

Evidence of "changed circumstances" after the prior decision allows the ALJ to make new findings concerning the unadjudicated period without disturbing the earlier

---

[2] Tension exists in the case law addressing whether *res judicata* applies to pre-hearing determinations. *Compare Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir. 1978) (noting that *res judicata* can apply even where "no oral hearing was held before an ALJ on the prior application"), *with Asbury v. Comm'r of Soc. Sec.*, 83 F. App'x 682, 684 n.1 (6th Cir. 2003) ("We recognize that the applicability of the *Drummond* analysis is not clear with respect to administrative decisions that do not follow 'trial-type' hearings."). This heretofore unresolved issue can generate difficult questions, and courts typically will not address it unless raised and argued by the parties to a case. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *3 n.2 (E.D. Mich. Feb. 19, 2015) (declining to address the doctrine's applicability to an initial determination in light of "the tensions in the case law and the parties' failure to raise the argument").

decision. *See Bailey ex rel. Bailey v. Astrue*, No. 10-262, 2011 WL 4478943, at *3 (E.D. Ky. Sept. 26, 2011) (citing *Drummond*, 126 F.3d at 842-43). In other words, even though the first ALJ did not make any findings concerning later periods, her decision still applies to those periods absent the requisite proof of changed circumstances. Thus, as applied in this Circuit, SSAR 98-4(6) and *Drummond* essentially create a presumption that the facts found in a prior ruling remain true in a subsequent unadjudicated period unless "there is new and material evidence" on the finding.

To overcome this presumption, the Sixth Circuit has consistently anchored the analysis on the comparison between the "circumstances existing at the time of the prior decision and the circumstances existing at the time of review . . . ." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). The court explained in a case predating *Drummond*: "[W]hen a plaintiff previously has been adjudicated not disabled, she must show that her condition so worsened in comparison to her earlier condition that she was unable to perform substantial gainful activity." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-1233 (6th Cir. 1993). The ALJ must scan the medical evidence "with an eye toward finding some change from the previous ALJ decision . . . ." *Blackburn v. Comm'r of Soc. Sec.*, No. 4:1-cv-58, 2012 WL 6764068, at *5 (E.D. Tenn. Nov. 14, 2012), *R. & R. adopted,* 2013 WL 53980, at *1 (Jan. 2, 2013). That is, the evidence must not only be new and material, but also must show deterioration.[3] *Drogowski v. Comm'r of Soc. Sec.*, No.

---

[3] I note, as well, that an equally important corollary to this principle dictates that an ALJ may not find *improvement* in a claimant's condition absent new and material evidence thereof following an already adjudicated period. *See, e.g.*, *Albanna v. Comm'r of Soc. Sec.*, 2016 WL 7238925, at *15 (E.D. Mich. Nov. 22, 2016) (Morris, M.J.) (finding an ALJ erred by calling the claimant's illiteracy

10-12080, 2011 U.S. Dist. LEXIS 115925, 2011 WL 4502988, at *8 (E.D. Mich. July 12, 2011), *R. & R. adopted,* 2011 U.S. Dist. LEXIS 110609, 2011 WL 4502955, at *4 (Sept. 28, 2011). In *Drogowski*, for example, the court rejected the plaintiff's argument that a report met this test simply because it was not before the first ALJ. *See* 2011 WL 4502988, at *2, *8-9. The relevant change in circumstances is not a change in the availability of evidence but a change in the plaintiff's condition.

*Res judicata* is not a complete bar on reconsidering prior decisions or determinations: the regulations provide two mechanisms for such reexamination that escape the doctrine's effects. *Purter v. Heckler*, 771 F.2d 682, 691-93 (3d Cir. 1985) (discussing reopening as an exception to claim preclusion). The first, less important to *res judicata* case law, occurs just after the initial determination when the claimant's first step in the review process is sometimes a request for "reconsideration" of that decision. 20 C.F.R. §§ 404.907, 416.1407. The more critical and complicated mechanism is reopening a prior ALJ decision.

The regulations pertaining to reopening permit the Commissioner, through an ALJ or Appeals Council, to peel back the determination or decision and revise it. 20 C.F.R. §§ 404.987, 404.992, 416.1487, 416.1492. Either the claimant or the Commissioner can initiate the process. *Id.* A determination or decision may be reopened "for any reason" within twelve months of the notice of the initial determination, but "good cause" must exist if the reopening occurs within two years of the initial determination for SSI claims, or four

---

into question based on "thinly substantiated doubts" where a prior decision found him illiterate); *see also Drummond*, 126 F.3d at 842-43; *Hamblin v. Apfel*, 7 F. App'x 449, 451 (6th Cir. 2001).

years for DIB claims. *Id.* §§ 404.988, 416.1488. Good cause exists if, among other reasons, "[n]ew and material evidence is furnished" for either type of claim, SSI or DIB. *Id.* §§ 404.989, 416.1489. If a determination or decision is reopened properly, *res judicata* does not apply. *Kaszer v. Massanari*, 40 F. App'x 686, 690 (3d Cir. 2002).

The decision whether to reopen, unless it implicates a colorable constitutional issue, evades judicial review: courts can only review the Commissioner's final decisions made after a hearing. *See* 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977). Courts may, however, review a decision *not* to reopen a case in order "to determine whether *res judicata* has been properly applied to bar the pending claim or whether, even though *res judicata* might properly have been applied, the prior claim has nevertheless been reopened." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999); *see also Kaszer*, 40 F. App'x at 690 ("'[W]e will examine the record to determine whether or not a reopening has occurred.'" (quoting *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987))).

Implicit reopenings occur, with unfortunate frequency, where the ALJ crafts a decision that appears to "readjudicat[e] part of the period already adjudicated by the first decision" rather than "adjudicate only the subsequent period." *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 358 (6th Cir. 2013). Such a reopening occurs where the ALJ reviews the entire record, including portions from the already adjudicated period, and decides "the merits of the claim." *Tobak*, 195 F.3d at 186. One factor that could lead to finding an implicit reopening is the ALJ's failure to discuss the prior determination or the *res judicata* doctrine. *See Martin v. Comm'r of Soc. Sec.*, 82 F. App'x 453, 455 (6th Cir. 2003); *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 620 (6th Cir. 1987). Nonetheless, an

ALJ's review of old or new evidence does not necessarily signify a constructive reopening, for such a review would be required to decide against reopening as well as for it. *See Girard v. Chater*, 918 F. Supp. 42, 44-45 (D.R.I. 1996). The ALJ's discussion of new evidence likewise might relate to her independent determination of whether to grant benefits in the unadjudicated period, again indicating no reopening occurred. *See id.* at 44.

The ability to reopen—explicitly or implicitly—must meet certain regulatory requirements. 20 C.F.R. §§ 404.987-404.996, 416.1487-416.1494. Chief among these is the two-year (SSI) and four-year (DIB) time limits for good cause reopenings. *Id.* §§ 404.988, 416.1488. Consequently, an ALJ is powerless to reopen a claim outside these periods. *See Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("Because more than four years had passed since the denial of the original application, the Commissioner could not have constructively reopened Glazer's case.").

### G.    Analysis

At the outset, I note that Plaintiff previously filed a claim for DIB, which ALJ Jeanne M. VanderHeide denied in a January 2014 decision. (Tr. 70-84). Plaintiff and Defendant agree that, although the ALJ in the instant case erred in failing to address this prior decision, he nevertheless crafted a more restrictive RFC than did the previous ALJ, rendering this error harmless. (Doc. 17 at ID 1605-07); (Doc. 19 at ID 1636-38); *accord, e.g.*, *Green v. Comm'r of Soc. Sec.*, No. 16-10093, 2016 WL 7972149, at *8 (E.D. Mich. Dec. 21, 2016), *R. & R. adopted sub nom. Green v. Colvin*, No. 16-10093, 2017 WL 282175

(E.D. Mich. Jan. 23, 2017) ("Where an ALJ in a subsequent decision renders an RFC finding which is more restrictive than the ALJ in a prior decision, the claimant has no cause for remand even if the subsequent ALJ failed to properly apply the preclusive effect of the earlier decision, because any error inures to the claimant's benefit.").

Plaintiff furnishes three arguments in support of his Motion: (1) the ALJ did not properly consider the decision of the Department of Veteran Affairs ("VA determination") that he is disabled and in need of attendant care, (Doc. 17 at ID 1607-09); (2) the ALJ improperly dismissed evidence of transient cardiovascular problems, (*Id.* at ID 1609-10); and (3) despite giving great weight to the opinion of Dr. Tavel, Plaintiff's treating physician, the ALJ failed to adopt his "limitation to occasional reaching," (*Id.* at ID 1611-12).

### 1.      The VA Determination

Plaintiff first observes that he "was granted a non-service-connected pension from the [VA], based upon a finding that he was unable to maintain substantially gainful employment as the result of his nonischemic dilated cardiomyopathy and transient ischemic attacks." (Doc. 17 at ID 1607). In his view, the ALJ failed to comply with SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), because he "simply dismissed the VA's decision out of hand because a different standard may have been applied," and he "failed to explain precisely what differed in the standards in question." (Doc. 17 at ID 1608-09).

In discounting the VA determination, the ALJ acknowledged that the VA found Plaintiff "would not be able to maintain substantial gainful employment," but reasoned:

> While the disability determinations of other governmental agencies are entitled to consideration, they are not entitled to any particular weight in determining disability for Social Security purposes . . . . In this case, the undersigned notes that the [VA's] finding is not based on Agency policy or definitions of disability. Therefore, it is entitled to little weight.

(Tr. 20) (citing SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). According to SSR 06-03p, the Commissioner must "explain the consideration given to" disability determinations made by other governmental entities because such determinations "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules," but "[b]ecause the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner," and because "other agencies may apply different rules and standards" in making their determinations, the SSA is not bound by their findings.

The ALJ's explanation at issue fulfills the mandate in SSR 06-03p to explain his consideration of the VA disability determination. Contrary to Plaintiff's averments, the ALJ discussed the record evidence at length in his opinion, including the evidence underlying the VA's determination. (Tr. 17-18); *e.g.*, (Tr. 313, 318, 420, 422, 434, 442, 444, 450-51, 511, 532, 617, 636, 645, 651, 657, 738, 762, 792, 856, 883, 891, 927, 1113, 1120, 1152, 1166, 1204, 1226, 1246, 1252, 1304, 1463) (benign cardiac findings); (Tr. 277, 284, 348, 359, 367, 370, 383, 391, 398, 401, 406, 431-32, 434, 436, 480, 491, 562, 575, 608, 627, 651, 792, 855, 866, 891, 915, 1152, 1203, 1235) (normal musculoskeletal findings); (Tr. 311, 391, 595, 624, 1123, 1153, 1173, 1331) (lack of significant abnormalities in an EEG or EKG); (Tr. 314, 316-17, 1038-39, 1042) (normal MRI of the brain); (Tr. 1204, 1220, 1382-83, 1406, 1432) (functional range of motion in shoulder);

(Tr. 348, 367, 383, 406, 790, 812, 905, 923, 938, 996) (strength intact); (Tr. 398, 563, 590, 615, 646) (noncompliance with medical recommendations or treatment); (Tr. 450-51, 622, 1132, 1173, 1305, 1331) (normal sinus rhythm); (Tr. 589, 1066) (effectiveness of treatment); (Tr. 359, 369-70, 396, 401, 415, 459, 462, 482, 562, 575, 615, 632, 792, 811, 855, 866, 874, 891, 915, 1066, 1211, 1223, 1251) (denying chest pain). Therefore, his election to discount that determination reflects an implicit finding that the VA's more lenient standards motivated its favorable findings, and that the same evidence was not sufficient to prove more severe limitations in the Social Security context. *Accord Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510 (6th Cir. 2013) ("Plaintiff also claims that the [ALJ] did not adequately explain her reasons for not accepting the [VA] disability rating. Plaintiff fails to look at the entire decision."); *see also, e.g.*, *Tiffany v. Colvin*, No. 3:13-CV-839-H, 2014 WL 1922929, at *14 (W.D. Ky. May 14, 2014) ("[A]n ALJ may validly elect to give a VA disability rating limited weight when the circumstances of the case under review indicate that the VA decision is not adequately supported by the record."); *cf. Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 531 (6th Cir. 2014) (remanding because the ALJ's deficient consideration of treating sources' opinions indicted his consideration of a VA disability determination that rested on those opinions); *King v. Comm'r of Soc. Sec.*, 779 F. Supp. 2d 721, 726 (E.D. Mich. 2011) (remanding because "[t]he ALJ wrote in her decision that she 'does consider' the VA's determination, but she did not explain whether she accorded any weigh [sic] to it, and if not why not.").

For these reasons, Plaintiff's argument on this ground should fail.

### 2.   Transient Cardiovascular Problems

Plaintiff next suggests the ALJ "inappropriate[ly] dismiss[ed]" his "transient [cardiovascular] problems, which could still be work-preclusive." (Doc. 17 at ID 1609). "[I]t is not enough to simply state that, while [Plaintiff] may be unable to work some days, it is sufficient that he could work others." (*Id.* at 1610). Per the VE's testimony that "during a probationary period" an employee could not "miss more than one day per month," Plaintiff contends his symptoms would keep "him off work more than one day a month" and therefore "be work-preclusive." (*Id.*).

The ALJ did not, however, "simply state that, while [Plaintiff] may be unable to work some days, it is sufficient that he could work others." (*Id.*). Rather, the ALJ reasoned that "abnormal clinical presentations were offset by generally benign presentations noted elsewhere in the record and by evidence of effective treatments . . . ." (Tr. 18) (citing (Tr. 285, 510, 532, 623, 675-76)). The record corroborates the ALJ's rationale. *E.g.*, (Tr. 313, 318, 420, 422, 434, 442, 444, 450-51, 511, 617, 636, 645, 651, 657, 738, 762, 792, 856, 883, 891, 927, 1113, 1120, 1152, 1166, 1204, 1226, 1246, 1252, 1304, 1463) (benign cardiac findings); (Tr. 311, 391, 595, 624, 1123, 1153, 1173, 1331) (lack of significant abnormalities in an EEG or EKG); (Tr. 348, 367, 383, 406, 790, 812, 905, 923, 938, 996) (strength intact); (Tr. 450-51, 622, 1132, 1173, 1305, 1331) (normal sinus rhythm); (Tr. 589, 1066) (effectiveness of treatment); *see also* (Tr. 359, 369-70, 396, 401, 415, 459, 462, 482, 562, 575, 615, 632, 792, 811, 855, 866, 874, 891, 915, 1066, 1211, 1223, 1251) (denying chest pain). In addition, the ALJ translated his findings into a number of exertional and non-exertional limitations related to Plaintiff's heart condition and obesity, including: a restriction to sedentary work; an inability to climb ladders, ropes, and

scaffolds; a significantly reduced capacity to climb ramps and stairs, as well as to balance, stoop, kneel, crouch, and crawl; and a significantly reduced capacity to withstand exposure to heat, cold, humidity, vibration, and unprotected heights. (Tr. 16). Plaintiff does not actually challenge these limitations, and therefore waives any objection to them. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (undeveloped arguments are waived). Nor does Plaintiff deny that per the VE's testimony—which the ALJ found persuasive—a substantial number of jobs existed in the national economy for an individual with the limitations set forth in the ALJ's RFC assessment. (Tr. 21); *see Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (noting that the ALJ could rely on the VE's testimony after asking "if her testimony was consistent with the Dictionary [of Occupational Titles], and she answered that it was"); *Barnes v. Comm'r of Soc. Sec.*, No. 1:14-CV-1166, 2015 WL 9463190, at *4 (W.D. Mich. Dec. 28, 2015) ("At step five of the sequential analysis, the ALJ may consider 'reliable job information' such [as] the Dictionary of Occupational Titles. . . . The ALJ is also permitted to rely on the testimony of vocational experts." (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009)) (internal citations omitted)).

In sum, the ALJ's reasoning as to Plaintiff's transient cardiac problems passes muster, and Court should find Plaintiff's argument to the contrary unpersuasive.

### 3.    Dr. Tavel's Reaching Limitation

In his final argument, Plaintiff notes that the ALJ granted Dr. Tavel's opinion great weight and adopted his recommendation as to Plaintiff's ability to reach overhead, but not as to Plaintiff's ability to engage only "occasionally" in other reaching. (Doc. 17 at ID

1611). "This is no harmless error, where the job descriptions from the Dictionary of Occupational Titles for each of the three jobs the ALJ found [Plaintiff] capable of performing . . . require *frequent* reaching." (*Id.* at ID 1611-12).

Although Plaintiff is correct in observing that "[t]he limitation to occasional reaching (other than overhead) did not appear" in his RFC assessment or "in the hypothetical question posed to the VE," (*Id.* at ID 1611), he forgets that "[a]n ALJ is only required to incorporate into a hypothetical question those limitations he finds credible," *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013). The ALJ's thorough discussion of the evidence shows he did not find Dr. Tavel's suggested reaching limitation supported by the record. (Tr. 17-18); *e.g.*, (Tr. 277, 284, 348, 359, 367, 370, 383, 391, 398, 401, 406, 431-32, 434, 436, 480, 491, 562, 575, 608, 627, 651, 792, 855, 866, 891, 915, 1152, 1203, 1235) (normal musculoskeletal findings); (Tr. 1204, 1220, 1382-83, 1406, 1432) (functional range of motion in shoulder); (Tr. 348, 367, 383, 406, 790, 812, 905, 923, 938, 996) (strength intact). In accurately summarizing Dr. Tavel's findings and granting his opinion great weight, the ALJ did not purport to adopt all of Dr. Tavel's recommended limitations, nor was he obligated to do so. *Accord, e.g.*, *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt . . . [the source's] limitations wholesale."); *Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject."); *Allen v. Comm'r of Soc. Sec.*, No. 16-CV-11291, 2017 WL 2772679, at *10 (E.D. Mich. May 2, 2017) ("The undersigned

finds no error in the ALJ's decision not to incorporate a limitation on production quotas, as an ALJ is not required to adopt all of a non-examining source's findings, even if the ALJ gives the opinion great weight."), *R. & R. adopted sub nom. Allen v. Berryhill*, No. 16-11291, 2017 WL 2734351 (E.D. Mich. June 26, 2017); *Mendiola v. Soc. Sec. Admin.*, No. 3:15-CV-00995, 2016 WL 5800470, at *5 (M.D. Tenn. Sept. 30, 2016) ("Where, as here, the ALJ's RFC determination considered the entire record, the ALJ is not required to adopt any particular opinion completely.").

Accordingly, Plaintiff can show no error in this regard, and this Court should uphold the ALJ's findings.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 17), be **DENIED**, that the Commissioner's Motion, (Doc. 19), be **GRANTED**, and that this case be **AFFIRMED**.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 10, 2018                    S/ PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

28

Date: May 10, 2018                            By s/Kristen Castaneda
                                              Case Manager